Fuld, J.
In September of 1955, the defendant Caliguira, operating a pizzeria and restaurant in Brooklyn, entered into a written contract with the plaintiff Feder providing for the installation in his premises of an automatic coin-operated phonograph, a juke box, “ for the duration of [the] agreement and any renewal term thereof ”. The agreement provided for the parties to share the gross proceeds of the machine’s operation, placing the proprietor under no financial burden, his only obligation being to keep the juke box connected to an electric outlet on the premises, ‘ ‘ in readiness for operation during all business hours ’ ’ and ‘ ‘ to furnish the necessary electric current for * * * [its] operation ’'.[1]
The contract was for a period of three years, it being recited, however, that it “ shall renew itself automatically for like periods, at the same terms and conditions, unless either party gives to the other written notice of its intention to cancel said agreement, by registered mail, at least thirty days prior to the expiration of this agreement or any renewal period thereof.” The three-year term expired on September 10, 1958. Neither party gave notice of termination and, when Caliguira *403 ' ‘ ordered ’ ’ Feder to remove the machine from his store unless he paid him a $500 bonus, the latter instituted this suit in the Municipal Court for damages for breach of contract, on the theory that the agreement had been automatically renewed for another three years.
The defendant interposed a general denial and then moved for summary judgment. It was his position that section 399 of the General Business Law rendered the automatic renewal provision of his contract with the plaintiff inoperative because the notice required by the statute, calling the “ lessee’s ” attention to the existence of that provision, was not given and that, therefore, his contract terminated upon the expiration of the initial three-year period, on September 10, 1958.[2] The plaintiff having made a cross motion for summary judgment, the Municipal Court granted the plaintiff’s motion and denied the defendant’s. Appeals followed to the Appellate Term and the Appellate Division; the Appellate Term reversed both orders, granting the defendant’s motion for summary judgment and denying the plaintiff’s, but the Appellate Division modified the Appellate Term’s order to the extent of denying summary judgment to the defendant. Stated more simply, the Appellate Division decided that neither party was entitled to summary judgment and that there should be a trial. The defendant alone sought leave to appeal and, in granting his application, the Appellate Division certified for our consideration the question whether section 399 of the General Business Law is applicable to the agreement between the parties.
The answer to this question depends, of course, upon whether that agreement may be deemed a “ lease ” of personal property within the compass of section 399. We agree with the Appellate Division that it may not be so regarded. There are signposts here clearly indicating that the word “lease ” as used in the statute was intended to denote solely and exclusively the usual *404 and ordinary lease arrangement whereby one party gives np his control and possession of property to another in return for the latter’s undertaking to pay rent for its use.
As to the meaning of the word “ lease ”, it is of some consequence that, when the Legislature enacted section 399, the decided cases — dealing, of course, with different issues—were to the effect that agreements somewhat similar to the one before us, involving coin-operated washing machines, may not be considered or treated as leases. (Cf. Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp., 191 Misc. 884; Halpern v. Silver, 187 Misc. 1023; Kaypar Corp. v. Fosterport Realty Corp., 1 Misc 2d 469, affd. 272 App. Div. 878; Muller v. Concourse Investors, 201 Misc. 340.) It is a fair deduction that the Legislature did not intend a meaning for the term “ lease ” in section 399 different from that already given it by the courts. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 75; see, also, People v. Richards, 108 N. Y. 137, 146-147; Matter of Arundel Corp. [Corsi], 273 App. Div. 399, 405.)
It is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights. The mere fact that the agreement before us twice refers to the defendant as “ lessee ” does not, of course, transform it into a lease. (See, e.g., Matter of New York World-Tel. Corp. v. McGoldrick, 298 N. Y. 11, 18; Reynolds v. Van Beuren, 155 K. Y. 120, 123.) As this court said in the World-Telegram case (298 N. Y., at p. 18), “ we must look to the rights it [the agreement] confers and the obligations it imposes ” in order to determine the true nature of the transaction and the relationship of the parties.
Looking to the actual terms of the agreement in this case, it is plain that it is not a lease. Of high significance is the fact that the defendant proprietor pays no rent for the juke box, but rather shares in the gross receipts earned by the plaintiff company from its use. Were this a lease of the machine, the defendant would be required to pay rent for its use instead of deriving profit therefrom. The very fact that he shares with the owner of the juke box in the latter’s receipts demonstrates that he is being paid by the owner for allowing him to place it in his store and negates the possibility that the juke box is being leased by the plaintiff to the defendant. In short, what serves to differ *405 entiate the agreement before us from a lease is not, as suggested, that percentage payments are involved—for, of course, rent may be based on a percentage of a tenant’s gross receipts — but that no rent obligation whatsoever is imposed on the defendant. Indeed, in the present case, the defendant, who claims to be a lessee, is actually sharing in the receipts realized by the “ lessor ” from the latter’s own machine!
The possibility that the agreement reflects a lease transaction is also negated by other terms contained in it. The contract provides that ‘1 the automatic coin operated phonograph and the contents thereof, are and shall continue to be the sole property of the Company ” and that the “ Proprietor agrees to keep the [machine] connected to an electric outlet in his premises and in readiness for operation during all business hours ”. The proprietor himself is given neither the use of the machine, the right to control its use nor any other form of dominion over it. A lease of property in which the lessee has no right either to use the property or to control its use is an unheard of legal conception.
It is clear, then, that the agreement between these parties is not a “ lease ’ ’ within any ordinary or usual sense of the term. It is equally plain that the automatic renewal provisions of the agreement are not anything like those which stimulated the Legislature to enact section 399. The evil aimed at was the infliction of continuing and, at times, heavy financial burdens upon unwary businessmen by means of automatic renewal clauses. (See Memorandum of Assemblyman Savarese, the bill’s sponsor, N. Y. Legis. Annual, 1953, pp. 61-62; see, also, Peerless Towel Supply Co. v. Triton Press, 3 A D 2d 249.) The situation which the Legislature must have had in mind was the typical lease of personal property, in which the owner of the articles transfers their use and possession in return for a stipulated rental that the lessee is under a continuing obligation to pay. (See, e.g., Peerless Towel Supply Co. v. Triton Press, 3 A D 2d 249, supra.) The Legislature was concerned with the unfairness of binding the lessee to a “ renewed ” term and forcing him to pay the rental for such renewed term even though he may not have known about the automatic renewal clause or may have forgotten about it.
*406 The agreement here under consideration imposes no such onerous financial burden or obligation upon the defendant. The plain fact is that he made no promise to pay any rental or any other sum and this factor alone differentiates the ‘ ‘ lease ’ ’ covered by section 399 from the business arrangement before us. (See, also, N. Y. Legis. Annual, 1953, supra, p. 62, in which Assemblyman Savarese instances a water cooler rented to a business office.) He and the plaintiff simply agreed to divide the gross proceeds between them and, if the juke box earned nothing, the defendant was under no duty to pay anything. True, as the defendant notes, he had to provide space for the machine and pay for the electric current used when it was in operation. But the imposition of such a minimal obligation, if it be an obligation at all, during the renewal term was not the evil which our law-making body sought to eliminate by enacting section 399 of the General Business Law.
The order of the Appellate Division denying the defendant summary judgment should be affirmed, with costs, and the certified question answered in the negative.

. Section 399 reads: “No provision of a lease of any personal property which states that the term thereof shall be deemed renewed for a specified additional period unless the lessee gives notice to the lessor of his intention to release the property at the expiration of such term, shall be operative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him, shall give to the lessee written notice, served personally or by mail, calling the attention of the lessee to the existence of such provision in the lease.”