THE STATEMENT, INC., Appellant, v PILGRIM'S LANDING, INC., Respondent.

Fourth Department, July 18, 1975

*Frederick Thompson* for appellant.

*Johnson, Reif & Mullan (John A. Titus* of counsel), for respondent.

MOULE, J. P. This case is presented upon stipulated facts. Defendant Arrows Restaurants, Inc. (Arrows), as tenant, entered into a lease with the estate of Isaac Gordon, as landlord, in August, 1965, for the operation of a restaurant located at 3400 Monroe Avenue in the Town of Pittsford. Thereafter, Arrows entered into a sublease with its wholly-owned subsidiary, defendant Pilgrim's Landing, Inc. (Pilgrim), under which Pilgrim operated the restaurant until 1969. On November 27, 1968, Arrows negotiated a conditional sublease with plaintiff providing that plaintiff could replace Pilgrim as the operator of the restaurant. This conditional sublease incorporated by reference the underlying lease between the estate of Isaac Gordon and Arrows. Since plaintiff did not possess a liquor permit at that time, the lease was not to commence until the day following the date on which plaintiff received its permit. Further, if plaintiff failed to obtain its liquor permit by January 1, 1969, Arrows reserved the right to terminate the agreement at its option.

On the same date that the conditional sublease was entered into between plaintiff and Arrows, plaintiff also entered into what was termed a "management agreement" with Pilgrim. Its stated purpose was to enable plaintiff to manage the restaurant under Pilgrim's liquor permit[1] "for the period commencing December 16, 1968 and terminating when [plaintiff] receives its liquor permit, and the sublease heretofore entered into by [plaintiff] and Arrows Restaurants, Inc., shall become effective."

During the term of the "management agreement" plaintiff was obligated to manage and operate the restaurant under "the same terms and conditions as are contained in the [conditional] sublease" entered into between plaintiff and Arrows. For this purpose, the "management agreement" di-

---

1. This arrangement had the approval of the State Liquor Authority.

rected that in reading the conditional sublease, the name Pilgrim was to be inserted in each instance where the name Arrows appeared. The "management agreement" further provided that if plaintiff failed to obtain a liquor permit by January 1, 1969, the agreement nevertheless could be renewed for successive one-year terms by plaintiff giving written notice to Pilgrim prior to January 1 of the succeeding year.

The amount and procedure for payment of rent by plaintiff was contained in subdivision 2 of the conditional sublease. Plaintiff was required to pay a percentage of its gross sales in monthly installments on the 10th day of each month until June 30, 1969 after which date the rent was still to be calculated upon a percentage basis but with a minimum monthly rental of $3,333.33. Plaintiff was also required to furnish monthly financial reports. However, despite plaintiff's gross revenue of over $290,000, which would have resulted in a $21,899.34 rent liability, only $10,609.14 was paid. This sum included both offsets and cash. Furthermore, no financial report was submitted.

Pursuant to the provisions of the conditional sublease, plaintiff made extensive renovations in the premises with the knowledge and consent of the defendants. Arrows also made renovations to equipment in the restaurant in accordance with its obligations under the sublease. On January 20, 1969, plaintiff began operating the restaurant under its management agreement with Pilgrim, although it had not yet obtained a liquor permit nor given written notice to Pilgrim of its intent to continue. From January 20, 1969 until August 11, 1969 plaintiff was the sole occupant and user of the premises.

Defendants' attorneys handled the preparation of plaintiff's application for a liquor permit from August, 1968 until August 6, 1969, but no liquor permit was ever obtained. On August 11, 1969, five days after defendants' attorneys ceased their efforts to obtain a liquor permit for plaintiff, defendants re-entered the premises and excluded plaintiff from the property. Concurrent with this re-entry, the defendants personally delivered to plaintiff a notice of termination of both the sublease and management agreement. Plaintiff's attorney rejected this notice in a letter dated August 15, 1969 on the ground that it was not timely delivered. His basis for such rejection was the failure of defendants to comply with the notice provisions contained in the underlying lease between Arrows and the estate of Isaac Gordon.

Paragraph 8 of the underlying lease provided for five days' notice of termination in the event of 15 days' default in the payment of rent and, similarly, five days' notice of termination after 20 days' default of any other lease provision. Further, paragraph 9 of the underlying lease, the only provision dealing with re-entry, establishes such right only if the tenant vacates or abandons the premises during the lease term.

Plaintiff brought this action seeking a determination that its "management agreement" with defendant Pilgrim was actually a lease and demanding judgment for wrongful eviction, for conversion of certain items of personalty and improvements to the realty, and for treble damages under section 853 of the Real Property Actions and Proceedings Law. Both defendants joined in a counterclaim. Defendant Pilgrim sought unpaid rent and liquidated damages in the amount of $30,000 as called for in the "management agreement" incorporating the conditional sublease. Defendant Arrows sought renovation expenses and damages for interference with its business.

Both plaintiff and defendants cross-moved for summary judgment. Special Term granted plaintiff's motion only insofar as it sought recovery for improvements to the premises. It found that the measure of plaintiff's damages in this regard would be the amount by which the value of the premises was enhanced, rather than the cost of the improvements, and ordered an inquest as to this sum. It also granted defendant Pilgrim's motion only insofar as it sought liquidated damages in the amount of $30,000 under the "management agreement" and denied defendant Arrows' motion in its entirety.

Special Term specifically found that the only effective agreement between the parties was the "management agreement" between plaintiff and Pilgrim. The court construed this agreement to be a license rather than a lease and, therefore, determined that the notice of termination provided for in the underlying lease which it incorporated was not required and that defendants could terminate their relationship with plaintiff at their option since no liquor permit was obtained by January 1, 1969. It further found that since plaintiff was not forcibly evicted within the meaning of section 853 of the Real Property Actions and Proceedings Law, it was not entitled to recover treble damages or loss of anticipated profits.

It is not disputed that obtaining a liquor permit was a condition precedent to the commencement of the sublease

between Arrows and plaintiff. Therefore, Special Term was correct in its determination that there was no enforceable relationship in existence between these parties and Arrows had no basis for its counterclaims. We believe that Special Term erred, however, in construing the "management agreement" between plaintiff and Pilgrim as a license rather than a lease. In analyzing the nature of this document its contents must be examined in order to see what interest the parties intended to pass (*Meers v Munsch-Protzmann Co.,* 217 App Div 541, 543; 17 NY Jur, Easements and Licenses, § 196). The fact that the instrument herein was called a "management agreement" instead of a lease is not controlling since the end sought by the instrument rather than mere words governs its nature (*Greenwood Lake & Port Jervis R. R. Co. v New York & Greenwood Lake R. R. Co.,* 134 NY 435; 33 NY Jur, Landlord and Tenant, § 6).

The Court of Appeals has defined the term "lease" as "the transfer of absolute control and possession of property at an agreed rental" (*Feder v Caliguira,* 8 NY2d 400, 404; *People v Horowitz,* 309 NY 426). Further, "a tenancy involves an interest in real property which passes to the tenant, and a possession exclusive even of that of the landlord, except as the lease permits the landlord's entry, and saving always his right to enter to demand rent or to make repairs." (*Layton v Namm & Sons,* 275 App Div 246, 249, affd 302 NY 720.) Under the "management agreement", it is clear that plaintiff was granted the right to absolute control of the restaurant as of December 16, 1968, its effective date, even though plaintiff's failure to obtain a liquor permit gave Pilgrim a right to terminate the agreement. There was also an agreed rental which was to be paid. Therefore, the agreement between Pilgrim and plaintiff was a lease (see *Saratoga State Waters Corp. v Pratt,* 227 NY 429, 442; 33 NY Jur, Landlord and Tenant, § 9).

Plaintiff contends that since it was a subtenant of Pilgrim under a valid lease, it was wrongfully evicted because it was not served with the notices required by the lease for breach and termination. However, by its failure to give written notice prior to January 1, 1969 of its intention to continue in contravention of the express provision of its lease with Pilgrim, plaintiff allowed it to lapse and cannot, therefore, rely on its notice provisions (see *Matter of Western Union Tel. Co. [American Communications Assn.],* 299 NY 177). Nevertheless,

this failure to renew did not end the landlord-tenant relationship between plaintiff and Pilgrim, since Pilgrim took no action to evict plaintiff and, in fact, allowed plaintiff to continue making improvements to the property after January 1, 1969. As a result, plaintiff became a subtenant at will *(Larned v Hudson,* 60 NY 102; see, also, *Fisher v Queens Park Realty Corp.,* 41 AD2d 547) and under section 228 of the Real Property Law its tenancy could only be terminated by the landlord by written notice of not less than 30 days. Pilgrim's failure to comply with this statutory notice provision made its ouster of plaintiff from the premises wrongful.

The trial court erroneously ruled that plaintiff's damages were limited to the enhancement to the premises resulting from the improvements it made. Plaintiff is entitled to recover the damages which it sustained as a natural consequence of the landlord's wrongful eviction *(Fisher v Queens Park Realty Corp.,* 41 AD2d 547, 549, *supra;* see, also, 33 NY Jur, Landlord and Tenant, § 152). Consequently, this matter must be remitted for a trial on the question of damages.

Regarding plaintiff's claim for treble damages, it was necessary on its motion for summary judgment that it allege facts to show that defendants' re-entry was in violation of section 853 of the Real Property Actions and Proceedings Law; to wit, that "the force employed to oust a tenant is unusual, tends to bring about a breach of peace, and the entry is with a strong hand, or by a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life and limb under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession" *(Drinkhouse v Parka Corp.,* 3 NY2d 82, 91; see, also, *Chapman v Johnson,* 39 AD2d 629). Plaintiff has not alleged in its complaint such violent or forceful acts with the specificity necessary to sustain treble damages. The stipulation of the parties also fails to present any proof which raises a factual issue as to the use of force or violence. Therefore, the treble damage claim must be dismissed.

Turning to Pilgrim's cross claims against plaintiff, the fact that a tenancy at will was in existence instead of a tenancy by way of written agreement does not prohibit it from obtaining the $11,290.20 rent agreed upon by the parties in their stipulation as being unpaid and due. Under these circumstances, the rental term of the lapsed lease was evidence of the rental

to which Pilgrim was entitled (Real Property Law, § 220). However, since the written agreement had lapsed, its liquidated damages provision was ineffective.

Therefore, the judgment of Special Term should be reversed and summary judgment should be entered in favor of Pilgrim for $11,290.20 accrued rent; plaintiff's cause of action for treble damages should be dismissed, as should defendants' cause of action for liquidated damages. Plaintiff should have summary judgment in its favor for wrongful eviction, and the case should be remitted for trial to determine plaintiff's actual damages as a consequence of its wrongful eviction.

CARDAMONE, SIMONS, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law and facts with costs to plaintiff and summary judgment granted in accordance with opinion by MOULE, J. P.