■ In the Matter of RIVERVIEW APARTMENTS COMPANY, Respondent, v RUTH GOLOS, as Assessor of the City of Elmira, et al., Respondents, and CITY SCHOOL DISTRICT OF THE CITY OF ELMIRA, Intervenor-Appellant. — Appeal from an order of the Supreme Court at Trial Term (Ellison, J.), entered November 17, 1982 in Chemung County, which granted petitioner's application, in a proceeding pursuant to article 7 of the Real Property Tax Law, to, *inter alia,* declare petitioner's properties tax exempt pursuant to the Public Housing Law and cancel taxes assessed against such properties. Petitioner Riverview Apartments Company (Riverview) is a partnership, one third of which is owned by Paul Burke. In 1976, the Elmira Urban Renewal Agency named Paul Burke a preferred developer for the Riverview Apartments project, a proposed low-income federally subsidized housing development under section 8 of the United States Housing Act of 1937 (US Code, tit 42, § 1437f), enacted in 1974, which authorized assistance payments directly to private developers (88 US Stat 662). The Elmira Housing Authority (authority) formed a subsidiary, the Elmira Housing Development Corporation, to issue bonds to secure a mortgage and provide necessary capital for construction. Burke maintained at trial that the agency director, the city tax assessor and the city manager promised him an assessment which would result in taxes of $25,000 to $30,000 per year. The prospectus which accompanied the public sale of bonds projected taxes of $30,000 per year. The city manager, who was the only one of the three city officials to testify at trial, denied knowledge of any such arrangement. On March 4, 1978, Riverview contracted for the project's construction. Several days thereafter, Riverview entered into a management agreement with Burke Rental Corporation, owned by Paul Burke and his wife, for management of the project. The bonds for the project were sold in April, 1978. Late in 1978, Burke learned that the city intended to tax the project at $75,000 to $80,000 a year. Burke then arranged with George Bragg, then chairman of the authority, who is now deceased, to have Riverview lease the project to the authority for 30 years in order that the project qualify for tax exemption under subdivision 3 of section 52 of the Public Housing Law. To qualify for tax exemption, a project must be leased by a housing authority for a term of not less than 10 years. The subject lease provided that, prior to its commencement, the parties would execute an attached management contract. The simultaneously executed management contract provided that Burke Rental Corporation would serve as management agent for the project for a 10-year term with two 10-year renewable options. Paragraph 14 of the lease required Riverview to obtain the written consent of three entities, the First National Bank of Atlanta as trustee of the bond proceeds, the Elmira Housing Development Corporation as issuer of the bonds, and the Federal Department of Housing and Urban Development, before the lease could commence. The authority approved the documents after review by counsel and, according to Burke, refused the opportunity to take over the project management. In 1979, the City of Elmira rejected a claim for

tax exemption and imposed an assessment on the property of $550,940. Riverview's protest of the assessment was not accepted. Thereafter, on September 7, 1979, Riverview commenced this proceeding under article 7 of the Real Property Tax Law on the grounds that (1) the assessment against the property was erroneous, unjust, and illegal because the property was totally tax exempt pursuant to subdivision 3 of section 52 of the Public Housing Law, (2) the assessment was illegal and erroneous because it was made at a higher proportionate valuation than other property on the same tax roll, and (3) the denial by the Board of Assessment Review of Riverview's complaint requesting that the assessment be stricken or reduced was arbitrary and capricious. A similar petition was filed for the tax years 1980 and 1981. The named respondents answered alleging various affirmative defenses. In October, 1980, the City School District of the City of Elmira was allowed to intervene. Its answer alleged as a complete defense that (1) the lease was a sham and a nullity because it did not give the authority any of the rights or responsibilities of a lessee and, therefore, the project did not qualify for a tax exemption under the Public Housing Law, and (2) the lease was procured by Riverview's misrepresentation or fraud that it would remain subject to real estate taxes. At the close of Riverview's evidence at the nonjury trial on August 5, 1982, the intervenor school district moved to dismiss the petition on the ground that Riverview had failed to show that the consents required by paragraph 14 of the lease were obtained. The school district also moved to amend its answer to allege the lease's invalidity because of the lack of the required consents. Riverview objected on the ground that the defense had to be specifically pleaded under CPLR 3015 as the denial of the performance of a condition precedent. By decision of November 1, 1982, the trial court ruled that the lease was valid because the authority's choice to enter into a management agreement with Burke Rental Corporation did not negate the leasehold interest the authority received from Riverview. The court rejected the argument that section 8 of the United States Housing Act of 1937 (US Code, tit 42, § 1437f) intended, on federally subsidized housing projects, to pre-empt local tax exemptions and require such projects to pay local taxes. Finally, the trial court found that CPLR 3015 (subd [a]), which requires specific pleading of a denial of a condition precedent to a contract, applied because the school district's defense was based on the lease's invalidity. The trial court thus denied the school district's motion to amend the answer on the ground that Riverview was prejudiced by the delay in presenting the defense. An order was entered which declared Riverview's lease valid, the property exempt from taxation and the 1979 through 1982 tax assessments invalid, and canceled taxes assessed against the property. The school district has taken this appeal. The critical and paramount issue of this controversy is the validity of the lease. While Riverview raises other issues pertaining to the pleadings and trial rulings, we pass directly to a consideration of the validity of the lease since we feel that Trial Term erred in declaring the lease valid. In New York, the test that distinguishes a lease from other arrangements is whether it "transfer[s] * * * absolute control and possession of property at an agreed rental" (*Feder v Caliguira,* 8 NY2d 400, 404). In interpreting a lease, the court must examine the purposes of the parties and the rights and obligations created thereby (*Farrell Lines v City of New York,* 30 NY2d 76, 82; *Feder v Caliguira, supra*). Where, as here, a lease and management agreement are executed simultaneously, they must be read together (*Evans Prods. Co. v Decker,* 52 AD2d 991, 992). An examination of the record reveals that the management contract delegates insufficient dominion and control to the lessee authority to constitute a lease (cf. *Feder v Caliguira, supra,* p 404; *Statement, Inc. v Pilgrim's Landing,* 49 AD2d 28, 33). On this ground alone, we conclude that the

Riverview Apartments project is not entitled to a tax exemption. We would also note that Trial Term erred in rejecting the argument that section 8 of the United States Housing Act of 1937 (US Code, tit 42, § 1437f) pre-empts exemptions, thereby requiring such Federally subsidized housing projects to pay local taxes. The policy behind the section 8 legislation, under which the Riverview project was built, is to provide assistance to private developers and thereby create incentives to construct and manage low-income housing (Senate Report No. 93-693, 93d Cong, Second Session, reprinted in 1974 US Code Cong & Admin News, pp 4273, 4314). Part of that assistance takes local taxes into account in setting allowable rental charges (US Code, tit 42, § 1437f, subd [a]) and provides for additional assistance in the event of substantial increases in real property taxes (US Code, tit 42, § 1437f, subd [c], par [2], cl [B]). The report accompanying the legislation expressly stated that prior State and local tax exemptions should not be applicable to the new program (Senate Report No. 93-693, 93d Cong, Second Session, reprinted in 1974 US Code Cong & Admin News, pp 4273, 4392). We conclude, therefore, that the State tax exemption in subdivision 3 of section 52 of the Public Housing Law conflicts with the Federal policy behind section 8 housing legislation, if indeed projects built under section 8 of the United States Housing Act of 1937 are intended to be exempted by subdivision 3 of section 52 of the Public Housing Law. We, therefore, declare the lease invalid and reinstate the tax assessments. In view of our determination on the validity of the lease, we determine it unnecessary to pass on the other issues raised. We would, however, remit the matter to Trial Term for consideration of petitioner's alternative ground regarding the alleged inequality of the assessment. Order modified, on the law, without costs, by reversing so much thereof as declared petitioner's lease valid, the property exempt from taxation and the 1979 through 1982 tax assessments invalid, and canceled taxes assessed against the property; matter remitted to Trial Term for further proceedings not inconsistent herewith; and, as so modified, affirmed. Sweeney, J. P., Mikoll, Yesawich, Jr., Weiss and Levine, JJ., concur.