In the Matter of GREAT LAKES-DUNBAR-ROCHESTER, a Joint Venture, Petitioner, v STATE TAX COMMISSION, Respondent.

Third Department, May 31, 1984

APPEARANCES OF COUNSEL

*Kavinoky & Cook* (*Peter D. Cook* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Maurice K. Peaslee* and *William J. Kogan* of counsel), for respondent.

OPINION OF THE COURT

HARVEY, J.

The use tax in this case was assessed on the amount of money reimbursed to the two members of a joint venture from the receipts of a construction contract in accordance with an agreement by the two members for the use of their heavy equipment on the job.

The City of Rochester advertised for bids to construct a sewer outfall which consisted of laying a pipe, 10 feet in diameter, 18,000 feet into Lake Ontario. Two corporations, Great Lakes Dredge and Dock Company and Dunbar and Sullivan Dredging Company, decided to bid on the contract as a joint venture. After it had been determined that they were the successful bidders, they entered into a written agreement confirming the establishment of the joint venture. Among other terms, the agreement provided that the two members would share the receipts, profits and losses on a percentage basis. Each was required to advance capital and equipment in the same ratio.

The construction contract which was executed by the president of each company referred to "Great Lakes Dredge & Dock Co. and Dunbar & Sullivan Dredging Co. (a joint venture)" as the contractor. Performance was commenced and each member contributed a certain amount of cash, personnel and equipment. A number of regular employees of both members, who were not hourly employees, were assigned to various supervisory positions and paid by the

individual members. From time to time, those members were reimbursed from the project receipts for the salaries which had been paid by them. In the same manner, each member assigned certain equipment to the job along with personnel to supervise its use. This equipment consisted primarily of marine vessels such as tugs and scows, together with clamshells and cranes mounted thereon. From time to time, the project manager reimbursed members for the use of their equipment at rates established by the joint venture agreement.

Examination of the joint venture agreement, the construction contract and the acts of the parties involved therein reveals nothing particularly novel in any respect. It is common practice for business entities to join forces in like manner in order to gain from the skills and experience of those entities, to take advantage of the ownership of the specialized equipment required by the job, to share in the advance of working capital to the project and to hedge against the possibility of business loss or other liability. The internal arrangement between the two members was essentially that one member would share two thirds and the other one third of the obligations and benefits of the project.

The dispute arises from the furnishing of equipment by the members to the project. Each was required to furnish equipment as nearly as possible in the same proportion as in the advance of working capital and the entitlement to profits. Although the record does not indicate the actual market value of the equipment involved, an examination of the nature of the equipment would indicate that the capital investment of each member was most substantial. It would also appear that the expense of ownership of the equipment would be substantial and continuation of those expenses over an extended period of time, without reimbursement, would seriously deplete cash reserves. Consequently, the two members agreed that they would be reimbursed for their expenses of ownership from time to time from receipts of the project. The problem in this case results from the members' written characterization of those reimbursements as "rents".

Respondent accepted the members' characterization at face value. On August 16, 1974, it made the determination that the amounts reimbursed the two members of the joint venture constituted rent of leased personal property and assessed a use tax of $334,795.65, plus penalty and interest in the amount of $119,321.39, for the period from December 1, 1969 through May 31, 1974. On October 11, 1974, petitioner demanded a hearing which was conducted October 31, 1978. Respondent rendered its decision on December 29, 1982, which found in petitioner's favor in some respects but continued its assessment for the amounts the members were reimbursed for the equipment assigned to the project.

The crucial and contested portion of respondent's decision is contained in the conclusions of law and is quoted as follows: "That the provisions of the joint venture agreement itself, together with the fact that the rental agreements in issue were entered into by separate and distinct entities and cash payments flowed among the separate bank accounts of the entities, more than provides 'substantial evidence and a reasonable basis for the ... conclusion that' the leasing of vessels and equipment by the joint venturers to the joint venture constituted the rental of tangible personal property and not a contribution of capital and was therefore subject to sales and use tax (see Concrete Delivery Co. v. State Tax Commission, 71 A.D.2d 330)."

Respondent correctly determined that a joint venture is a "person" as defined by subdivision (a) of section 1101 of the Tax Law. Although the section does not specifically refer to joint ventures, it does define a partnership as a person within the meaning of the article. Generally speaking, a joint venture is a partnership organized for a limited time and purpose (16 NY Jur 2d, Business Relationships, § 1578, pp 254-255; Dogan v Harbert Constr. Corp., 507 F Supp 254, 258). It is apparent, however, that respondent has taken a further step and has determined that a partnership is a person or entity separate and apart from the partners who compose it. This determination is contrary to basic, established law. A partnership, unlike a corporation, is not in the eyes of the law a legal entity separate and apart from the individuals composing the firm (15 NY Jur

2d, Business Relationships, § 1285, p 571; see *Caplan v Caplan,* 268 NY 445; *Chemical Bank v Ashenburg,* 94 Misc 2d 64, 67). Respondent's reliance upon *Matter of Concrete Delivery Co. v State Tax Comm.* (71 AD2d 330, mot for lv to app den 49 NY2d 709) and *Matter of Ormsby Haulers v Tully* (72 AD2d 845) is misplaced. Those cases pertained to transactions between individuals and corporations.

Although it is within the authority of the Legislature to treat partnerships as legal entities for specified purposes, it has not done so in article 28 of the Tax Law. Respondent is not entitled to any contrary inference because tax statutes are to be strictly construed in favor of the taxpayer (*Bathrick Enterprises v Murphy,* 27 AD2d 215, 23 NY2d 664). In order to establish tax liability on the part of this petitioner, it is necessary that there be substantial evidence supporting the conclusion that a lease of personal property took place. It was freely admitted by the joint venturers that they had frequently referred to their property as "rental". Petitioner has explained that this terminology has been used frequently and repeatedly by the members on prior occasions as an internal cost accounting technique. Nevertheless, it is not the terminology used by the taxpayer or the parties involved but rather the substance of the transaction that controls. The mere fact that an agreement is referred to as a "lease" or "rental" does not transform it into either one. Rather, what is essential is that the court look to the rights and obligations which the agreement confers to determine its true nature (*Feder v Caliguira,* 8 NY2d 400; see, also, *City of New York v Pennsylvania R. R. Co.,* 37 NY2d 298; *Matter of New York World-Telegram Corp. v McGoldrick,* 298 NY 11; *Mann Theatres Corp. v Mid-Island Shopping Plaza Co.,* 94 AD2d 466; *Dubay v Trans-America Ins. Co.,* 75 AD2d 312, mot for lv to app den 51 NY2d 709; *Statement, Inc. v Pilgrim's Landing,* 49 AD2d 28).

Examination of the facts and circumstances concerning the use of the subject equipment must consist of the joint venture agreement and the acts of the parties in conformance therewith. The primary characteristics of a lease are that it be a bilateral agreement (*Feder v Caliguira, supra,* p 404; 9 NY Jur 2d, Bailments & Chattel Leases,

§ 1, pp 9-10) which divests the party owning the property of possession, dominion and control, and vests those rights in a second party (*ibid.; Dubay v Trans-America Ins. Co., supra,* p 317). Secondly, there must be a provision for rent which is either specifically stated in the agreement or ascertainable from other facts in accordance with a formula or arrangement contained within the agreement (*Feder v Caliguira, supra,* p 404).

The evidence before the court establishes neither of these factors. The entities that owned the equipment never gave up possession, dominion and control. They merely assigned the equipment to the project where they continued possession and control in their individual capacities as members of the joint venture. Nor was there any definite and final determination as to the amount of rent to be paid. Although the members were reimbursed in accordance with agreed rates, there was no certainty that the members would be able to retain the money advanced. In the event of a financial loss resulting from the performance of the contract, the members would be compelled to share the loss and, necessarily, use some or all of the funds received during the progress of the work.

We conclude that respondent's determination is not supported by substantial evidence and that there is no rational basis for its assessment of the tax.

The determination should be annulled, with costs, and the matter remitted to respondent for further proceedings not inconsistent herewith.

MIKOLL, J. (dissenting). We respectfully dissent. The taxing authority's decision should not be disturbed unless clearly shown to be erroneous. The judicial function is limited in such instances. If a rational basis for the decision can be adduced from the record, the determination should be upheld (*Matter of Bes Corp. v Tully,* 46 NY2d 1038).

The record discloses that the joint venture agreement provided specifically for contributions of operating capital to the joint venture. It did not enumerate rental equipment as contribution of capital. The agreement also provided that no distribution of profits was to be made prior to the completion of the project. This term flies in the face of

petitioner's contention that the "rental" payments were really distribution of profits. Additionally, characterization of the transactions as rental in the invoices sent by the two corporations to petitioner and its checks in payment for the rentals contradicts its belated averment that the payments were not rentals. Respondent's reliance on the joint venture agreement was entirely rational (see *Matter of Heist Corp. v State Tax Comm.,* 50 NY2d 438).

Under the sections of the Tax Law dealing with sales and use taxes, a sale includes a rental (Tax Law, § 1101, subd [b], par [5]). Generally, in order for the sales tax to be applicable, there must have occurred a transfer of ownership or control of tangible personal property to petitioner (Tax Law, § 1105, subd [a]; see *Bathrick Enterprises v Murphy,* 27 AD2d 215, 23 NY2d 664). With rentals, the question is whether the transaction gave petitioner full dominion and control over the vessels and equipment (*Matter of Concrete Delivery Co. v State Tax Comm.,* 71 AD2d 330, mot for lv to app den 49 NY2d 709). Petitioner's claims that the requirements of a rental were not met here should be rejected. During the entire time of construction, it was petitioner who paid the two corporations $1,500 per person for all salaried personnel working on the machinery even though they were listed as employees on the two corporations' payrolls. Hourly employees were on petitioner's payroll. The manager of the construction project indicated that the progress of the project was not to be jeopardized by any decision of the two corporations to use or remove the equipment. It is rational to conclude upon these facts that the equipment was being used for joint venture purposes, that the personnel directing its operation were acting on behalf of the joint venture, and that the limited right of the corporations to remove personnel or equipment was not inconsistent with a transfer of possession and control to petitioner. The record contains substantial evidence that possession of the rental equipment passed to petitioner.

Respondent's determination should be confirmed and the petition dismissed.

KANE, J.P., and MAIN, J., concur with HARVEY, J.; MIKOLL and YESAWICH, JR., JJ., dissent and vote to confirm in an opinion by MIKOLL, J.

Determination annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent herewith.