OPINION OF THE COURT
Ralph W. Sparks, J.
statement of facts
Petitioner is the landlord of the subject premises pursuant to a lease granted by the City of New York under the Private *162 Ownership and Management Program (P.O.M.P.). On or about March 27, 1989, respondent was served with a petition and notice of petition for rent owing from 1987 through March 1989. Respondent failed to appear, a default judgment was entered, a warrant was issued, and on or about July 21, 1989, executed upon by a city marshal.
ISSUES
The court is called upon to interpret the agreement between the City of New York through one of its agencies, the Department of Housing Preservation and Development (hereinafter referred to as H.P.D.) and Kay Management Group Inc. This particular agreement arises out of P.O.M.P. Under this program city-owned buildings are placed under the management of private firms, in this case, Kay Management Inc. The purpose of this program is to provide private real estate firms with a mechanism to manage, repair, and eventually purchase city-owned buildings. In addition firms are required to provide responsible effective management and to stabilize conditions in the city-owned buildings. This includes intensive maintenance code violation removal, repair and rental of vacant apartments and the provision of satisfactory services to tenants. At the end of the contract, it is expected that the firms will purchase the buildings they have managed and return them to the tax rolls which appears to be a noble attempt to rehabilitate and maintain that part of the housing stock that had the misfortune to fall into the hands of the City of New York.
It is respondent’s contention that the agreement in question is not a lease but a contract for management services and petitioner lacks standing to maintain this action.
It is argued that Kay Management Inc. is an agent of the City of New York rather than a lessee. Respondent contends that the agreement between the City of New York and Kay Management Inc., although designated as a “lease”, is by its terms a contract for management services. If respondent’s claims are proven, these petitions must be dismissed because an agent of the landlord has no capacity to maintain a summary proceeding (City of New York v Gonzalez, NYU, May 3,1989, at 22, col 4).
law
In Gonzalez (supra), the court held that the agreement *163 between the parties was not a lease but a contract for management services, hence petitioner’s action was dismissed for lack of standing.
A thorough review of the papers submitted herein establish that H.P.D. entered into a document termed a lease and a separate agreement for managerial services.
The primary characteristics of a lease are that it be a bilateral agreement (Feder v Caliguira, 8 NY2d 400; Matter of Great Lakes-Dunbar-Rochester v State Tax Comma., 102 AD2d 1, 5) which divests the party owning the property of possession, dominion, and control, and vests those rights in a second party (Matter of Great Lakes-Dunbar-Rochester v State Tax Comma., supra; Dubay v Trans-America Ins. Co., 75 AD2d 312, 317, lv denied 51 NY2d 709). Secondly, there must be a provision for rent which is either specifically stated in the agreement or ascertainable from other facts in accordance with a formula or arrangement contained within the agreement (Feder v Caliguira, supra, at 404).
The first paragraph of the lease designated Kay Management as a lessee which, according to Black’s Law Dictionary 812 (5th ed 1979), is a tenant who has been given possession. Moreover, the lease further entrusts Kay Management Inc. with the duties of general managerial functions such as the employment and supervision of employees, advertising apartments and commercial space, the engagement of counsel, the institution of legal actions to recover rent or proceedings to evict tenants, the purchase of electricity and gas, the contracting for extermination services as needed, responding to complaints and requests of tenants and the engagement of a superintendent and janitor.
Although the private ownership and management contract curtails Kay Management’s activities in some respects, such actions are a common practice, especially clauses prohibiting subletting without the grantor’s permission (Real Property Law § 226-b); or that the lease restricts the use of the premises, regarding improvements or alterations. Furthermore, the approval of rendering, waiving rents, and following H.P.D. directives as to rents charged is analogous to rent stabilization and rent control law and programs that restrict and confine leases as well as rents.
Notwithstanding the fact that the lease states lessee shall pay rent to H.P.D. in the amount of $1 for the term of this lease, and other good and valuable consideration, receipt of *164 which is hereby acknowledged, one must not lose sight of the primary purpose of the P.O.M.P., i.e., to eventually have the buildings purchased.
Thus, in view of all the above, this court although faced with the identical issue in Gonzalez (supra), has a different perspective and finds that the léase juxtaposed with the contract for managerial services satisfies and sufficiently delegates dominion and control to Kay Management Inc. to constitute a lease. Hence Kay Management Inc. does have standing to maintain this proceeding under RPAPL 721 (10) as a lessee of the premises, entitled to possession.
The court further notes that since petitioner — Kay Management Inc. is a lessee and the H.P.D. the lessor in the disputed lease that any lease or perhaps appropriately termed sublease entered into by Kay Management and tenants of the designated buildings would confer the status of lessor upon Kay Management Inc. entitling petitioner as lessor to utilize RPAPL 721 (1).
Additionally, this court, sua sponte, joins the City of New York as a necessary party to this action pursuant to CPLR 1001 (a) (also, P.O.M.P. contract, art 24, § 6) in that the city may be inequitably affected by a judgment in this action. Accordingly, the caption is amended to read "City of New York by Kay Management Inc.” petitioner.
Finally, the court realizes that it is looking at this situation through rose colored glasses simply because it is desirous to see that portion of the housing stock that was so unfortunate to fall into the hands of the City of New York be rehabilitated and preserved which is within itself the real purpose and intent of the Legislature in its creation of the Department of H.P.D. and the Housing Part of the Civil Court of the City of New York.
In summary, respondent’s motion to dismiss the petitioner’s actions for lack of standing is denied, and the caption is amended to include the City of New York.