Matter of Cobbs Hill Vil. Tenants' Assn. v City of Rochester (2021 NY Slip Op 02949)





Matter of Cobbs Hill Vil. Tenants' Assn. v City of Rochester


2021 NY Slip Op 02949


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


859 CA 19-01977

[*1]IN THE MATTER OF COBBS HILL VILLAGE TENANTS' ASSOCIATION, BY ITS PRESIDENT LEE SENGBUSCH, LEE SENGBUSCH, CAROLINE REAMORE, KENNETH BOICE, CAROL WILSON, BARBARA VANWIE, BRENT GRATTAN, THE ABC STREETS NEIGHBORHOOD ASSOCIATION, INC., THE FRIENDS OF WASHINGTON GROVE, INC., UPPER MONROE NEIGHBORHOOD ASSOCIATION, BY ITS PRESIDENT CHRISTENA STEVENS, COALITION FOR COBBS HILL, BY ITS CO-CHAIRPERSON THOMAS PASTECKI, AND NUNDA BOULEVARD ASSOCIATION, BY ITS PRESIDENT JEFF MILLS, PETITIONERS-PLAINTIFFS-APPELLANTS,
v
CITY OF ROCHESTER, ROCHESTER CITY COUNCIL, CITY OF ROCHESTER MAYOR LOVELY WARREN, PLYMOUTH GARDENS, INC., ROCHESTER MANAGEMENT, INC., RESPONDENTS-DEFENDANTS-RESPONDENTS, ET AL., RESPONDENTS-DEFENDANTS. 






KAMAN, BERLOVE, MARAFIOTI, JACOBSTEIN & GOLDMAN, LLP, ROCHESTER (RICHARD G. CURTIS OF COUNSEL), FOR PETITIONERS-PLAINTIFFS-APPELLANTS. 



 Appeal from a judgment (denominated order and judgment) of the Supreme Court, Monroe County (William K. Taylor, J.), entered May 1, 2019 in a CPLR article 78 proceeding and declaratory judgment action. The judgment, among other things, dismissed the amended petition-complaint. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.
Memorandum: This appeal involves the redevelopment of Cobbs Hill Village, an affordable housing community for seniors located on property owned by respondent-defendant Plymouth Gardens, Inc. (Plymouth). In 1957, after it received approval from the New York State Legislature (L 1956, ch 453), respondent-defendant City of Rochester (City) sold the subject property—land that was formerly part of Cobbs Hill Park—to Plymouth's predecessor in interest. The deed conveying the property to Plymouth (1957 deed) contained several restrictions on the property's use and provided that ownership of the property would revert to the City once the mortgage on it had been repaid in full. Following the transfer of the property in 1957, Cobbs Hill Village, which contained 60 apartment units, was constructed on the property.
In 2016, Plymouth and respondent-defendant Rochester Management, Inc. (collectively, corporate respondents) sought to redevelop Cobbs Hill Village by demolishing the existing [*2]apartment complex and constructing, inter alia, new buildings containing a total of 104 apartment units (Project). To allow Plymouth to secure financing for the Project, inter alia, respondent-defendant Rochester City Council (City Council) adopted Ordinance No. 2018-224 (Ordinance), which authorized respondent-defendant City of Rochester Mayor Lovely Warren (Mayor) to enter into an agreement extending activation of the City's reversion interest to 2061 for the purpose of redeveloping the property. Previously, the City and Plymouth had agreed in 2009 to extend activation of the City's reversion interest until 2041, so that Plymouth could refinance the mortgage on the property.
Petitioners-plaintiffs (petitioners) thereafter commenced this hybrid CPLR article 78 proceeding and declaratory judgment action seeking, inter alia, to annul the determination adopting the Ordinance and any subsequent agreement entered into by the City, the City Council and the Mayor (collectively, City respondents). Petitioners are composed of residents of Cobbs Hill Village (resident petitioners) and various neighborhood associations that oppose the Project (organizational petitioners). In their first cause of action, petitioners asserted, as relevant on appeal, that the determination adopting the Ordinance was arbitrary and capricious because the City respondents failed to adequately inquire into whether the corporate respondents had complied with the restrictions in the 1957 deed, whether the corporate respondents had previously made false statements to the City in connection with the 2009 agreement, and whether the Project itself was contrary to the intent of the 1957 deed. In their second cause of action, petitioners asserted that the determination should be annulled because the Ordinance constituted a lease that had to be approved by a supermajority of the City Council. Petitioners appeal from a judgment that granted respondents' motions for summary judgment and dismissed the amended petition-complaint in its entirety. We affirm.
Initially, we note that this is properly only a CPLR article 78 proceeding because the relief sought by petitioners is available under CPLR article 78 without the necessity of a declaration (see Matter of Weikel v Town of W. Turin, 188 AD3d 1718, 1720 [4th Dept 2020]; see generally CPLR 7801; Matter of Level 3 Communications, LLC v Chautauqua County, 148 AD3d 1702, 1703 [4th Dept 2017], lv denied 30 NY3d 913 [2018]). Indeed, we note that no declaration is necessary because, as relevant on appeal, petitioners do not challenge the substantive validity of the Ordinance, but only the procedures by which it was enacted (see generally Voelckers v Guelli, 58 NY2d 170, 176 [1983]).
Petitioners contend that Supreme Court erred in granting respondents' motions insofar as they sought summary judgment dismissing the first cause of action on the ground that petitioners lacked standing. "Standing is a threshold requirement for a [party] seeking to challenge governmental action" (Matter of Sheive v Holley Volunteer Fire Co., Inc., 170 AD3d 1589, 1590 [4th Dept 2019] [internal quotation marks omitted]). "To establish traditional common-law standing, petitioners were required to show that they 'suffered an injury in fact, distinct from that of the general public,' and that their alleged injury 'falls within the zone of interests' sought to be protected by the provisions in question" (Matter of Barrett Paving Materials, Inc. v New York State Thruway Auth., 184 AD3d 1173, 1174 [4th Dept 2020], lv denied 35 NY3d 916 [2020], quoting Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998]). "The existence of an injury in fact—an actual legal stake in the matter being adjudicated—ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute in a form traditionally capable of judicial resolution" (Silver v Pataki, 96 NY2d 532, 539 [2001], rearg denied 96 NY2d 938 [2001] [internal quotation marks omitted]; see Consumers Union of U.S., Inc. v State of New York, 5 NY3d 327, 350 [2005]). The burden of establishing standing to challenge a governmental action like the one at issue here is placed "on the party seeking review" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]).
Here, we agree with petitioners that the court erred insofar as it granted the motions for summary judgment with respect to the first cause of action on the ground that they did not have standing, as third-party beneficiaries, to enforce the 1957 deed (see generally Mendel v Henry Phipps Plaza W., Inc., 6 NY3d 783, 786-787 [2006]). Petitioners' first cause of action seeks to annul the Ordinance by challenging, as arbitrary and capricious, the procedures by which the City respondents enacted the Ordinance because those procedures did not adhere to the terms of the 1957 deed. Thus, the court erred to the extent its analysis only considered the narrow question whether petitioners had standing as third-party beneficiaries to the deed, rather than [*3]whether they had standing to challenge the procedures used in enacting the Ordinance.
We conclude that the resident petitioners established standing to challenge the procedures by which the City respondents enacted the Ordinance. As current residents of Cobbs Hill Village—i.e., the site to be redeveloped—the resident petitioners suffered an injury in fact because the Ordinance, which facilitated the Project's financing, would lead to the demolition of their current residences, force them to live through the disruptive construction process, and result in moving them into a new residence. Additionally, the resident petitioners would suffer injury as a result of the Ordinance due to the increased number of tenants who would move into Cobbs Hill Village upon the Project's completion (see generally Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 310-311 [2015]; Matter of Muir v Town of Newburgh, N.Y., 49 AD3d 744, 746 [2d Dept 2008]).
With respect to the organizational petitioners, however, we conclude that only petitioner Cobbs Hill Village Tenants' Association, by its president Lee Sengbusch (Tenants' Association), had standing to challenge the enactment of the Ordinance. To establish organizational standing, a petitioner must show "that one or more of its members would have standing to sue; that the interests it asserts are germane to its purpose to such a degree as to satisfy the court that it is the appropriate representative of those interests; and 'that neither the asserted claim nor the appropriate relief requires the participation of the individual members' " (Matter of Niagara Preserv. Coalition, Inc. v New York Power Auth., 121 AD3d 1507, 1510 [4th Dept 2014], lv denied 25 NY3d 902 [2015], quoting Society of Plastics Indus., 77 NY2d at 775). Out of all of the organizational petitioners, only the Tenants' Association had standing with respect to the first cause of action because it is the only entity that satisfied the three requirements set forth above, i.e., by establishing that at least one of its members—as a resident of Cobbs Hill Village—had standing to sue, that the underlying proceeding is germane to the Tenants' Association's purpose to protect the interests of the tenants in their apartments, and that the relief that is sought—i.e., stopping the redevelopment project—does not require the direct participation of any of the Tenants' Association's individual members (see Niagara Preserv. Coalition, Inc., 121 AD3d at 1509-1510).
In contrast, the remaining organizational petitioners did not establish standing with respect to the first cause of action because they were unable to show that any of their individual members had standing due solely to their enjoyment of the park surrounding Cobbs Hill Village. There was no showing that any of the individual members of the other organizational petitioners used or enjoyed the park to a greater degree than most other members of the general public, and therefore they did not establish the requisite injury in fact to support a determination that they had standing to sue under the first cause of action (see Matter of Brummel v Town of N. Hempstead Town Bd., 145 AD3d 880, 881-882 [2d Dept 2016], lv denied 29 NY3d 903 [2017], rearg denied 29 NY3d 1047 [2017], cert denied — US &mdash, 138 S Ct 516 [2017]; see generally Society of Plastics Indus., 77 NY2d at 772-774).
Nonetheless, on the merits, we conclude that the court properly dismissed the first cause of action because the resident petitioners and the Tenants' Association failed to establish that the Ordinance should be annulled on the ground that the City respondents acted arbitrarily or capriciously in enacting it (see generally Matter of Town of Ellery v New York State Dept. of Envtl. Conservation, 159 AD3d 1516, 1518 [4th Dept 2018]; Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation, 152 AD3d 1016, 1018-1019 [3d Dept 2017]). Here, the record conclusively demonstrates that the City respondents engaged in a comprehensive and extensive process before enacting the Ordinance. Before they enacted the Ordinance, the City respondents subjected the Project's proposal—including its financing—to multiple levels of review. Importantly, the Ordinance was revised several times, and the City respondents considered, but ultimately rejected, alternative plans to redevelop the subject property. The City respondents also conducted three public hearings, which gave the public and all interested parties the opportunity to comment on the Ordinance prior to its enactment. Given the extensive procedure leading up to the Ordinance's enactment, we cannot say that the determination adopting the Ordinance was arbitrary or capricious.
Furthermore, we conclude that the court did not err in granting the motions insofar as they sought summary judgment dismissing the second cause of action because, contrary to petitioners' contention, the Ordinance did not constitute a lease that had to be approved by a supermajority of [*4]the City Council. Section 21-23 (C) of the Municipal Code of the City of Rochester requires that all ordinances authorizing a lease of City-owned real property must be approved by "3/4 of all the members" of the City Council. A lease is defined as a bilateral agreement "whereby one party gives up [its] control and possession of property to another in return for the latter's understanding to pay rent for its use" (Feder v Caliguira, 8 NY2d 400, 404 [1960]; see Black's Law Dictionary 1066 [11th ed 2019]). Indeed, "[t]he central distinguishing characteristic of a lease is the surrender of absolute possession and control of property to another party for an agreed-upon rental" (Mirasola v Advanced Capital Group, Inc., 73 AD3d 875, 876 [2d Dept 2010] [internal quotation marks omitted]).
Here, contrary to petitioners' contention, there is no basis in the record for concluding that the Ordinance, by extending until 2061 the activation of the City's reversion interest in the property, constituted a lease agreement subject to the supermajority requirement. The Ordinance did not authorize the transfer of control over the property—it merely delayed the date on which the City's reversion would be triggered. Nothing about the Ordinance divested the owner, Plymouth, of its possession, dominion or control of the property (see Feder, 8 NY2d at 404). Moreover, at the time the Ordinance was enacted, the City was not the title owner of the property, and therefore it lacked any power to cede control over the property to Plymouth. Simply put, because the Ordinance did not involve the lease of City-owned property, and merely delayed the vesting of the City's reversion in property it had already alienated in 1957, the Ordinance did not have to be approved by a supermajority of the City Council.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court