In the Matter of The FURNITURE DEN, INC., Debtor.

Joseph A. CHRYSTLER, Trustee, Plaintiff,

v.

MERSMAN TABLES, INC., Defendant.

Bankruptcy No. HK 80 01040.
Adv. No. 80 0638.

United States Bankruptcy Court, W. D. Michigan.

July 14, 1981.

Joseph A. Chrystler, Kalamazoo, Mich., trustee, plaintiff.

David Davidoff, Kalamazoo, Mich., for trustee.

David C. Myers, Grand Rapids, Mich., for defendant.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

The trustee, Joseph A. Chrystler, filed a complaint against the defendant, Mersman Tables, Inc., to recover a preference in accordance with 11 U.S.C. § 547.

The parties have stipulated the following:

"1. That in February, 1980, within 90 days of the date of the filing of these proceedings, the Defendant, Mersman Tables, Inc., received payments from the Debtor totaling $3,003.37 through a writ of execution placed in the hands of the Sheriff Dept. of Berrien County, Michigan, by the Defendant in an action pending in the Fifth District Court, Berrien County, Michigan, File # 79C 04217C.

2. That of the said sum of $3,003.37, the sum of $171.15 constituted court costs and statutory fees due the Berrien County Sheriff's office; that the sum of $604.19 represented contingent commissions and suit fees of the attorneys for the Defendant pursuant to its contractual arrangement with the Defendant.

3. That the net sum of $2,228.03 was turned over by the attorneys for the Defendant to the Defendant, Mersman Tables, Inc., and received by the said Defendant.

4. That the payment of the full sum of $3,003.37 was a transfer of property of the Debtor to the Defendant on account of antecedent indebtedness made while the Debtor was insolvent within 90 days of the filing of the petition herein, and that the said transfer enabled the Defendant to receive more than it would receive in liquidation under Chapter 7 of the Bankruptcy Act if the transfer had not been made.

5. That the purpose of this stipulation is to submit to the court the sole legal question as to whether the amount of the preferential transfer was the total sum paid to the Defendant of $3,003.37, or the net sum received by the Defendant in the sum of $2,228.03."

Both parties have filed briefs, and the case was taken under advisement for a written opinion.

### I

The elements of an avoidable preference are set out in 11 U.S.C. § 547(b):

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

"Transfer" is defined by 11 U.S.C. § 101(40):

"(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of *or parting with* property or with an interest in property, including retention of title as a security interest." (Emphasis supplied)

The parties have effectively stipulated to all the elements of the preferential transfer in paragraph 4 of their stipulation. Aside from the stipulation in paragraphs 1, 4, and 5 that the defendant "received payments" or "was paid" the total sum of $3,003.37, 11 U.S.C. § 101(40) indicates that the transfer consists of the gross amount which the debtor parted with. Therefore, I find that the amount of the preferential transfer was $3,003.37. However, this finding does not decide the real issue in this case, which is *not* the amount of the preferential transfer, but is instead the amount which the trustee may *recover* from the preferred transferee, Mersman Tables, Inc.

II

A. Under the now repealed Bankruptcy Act of 1898 ("the old Act") the rules for avoidance of a preferential transfer *and* the trustee's recovery from transferees were contained in the same subsection: § 60(b), which stated in part:

"b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. *Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property*, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: . . ." (Emphasis supplied)

Under this provision, if the transferred property itself could be recovered, the trustee would not be allowed to recover its "value". 3 pt. 2 *Collier on Bankruptcy* ¶ 60.59 p. 1101 (14th Ed.). But if the transferee had "converted" the property—for example, had sold repossessed collateral to a bona-fide purchaser at a foreclosure sale—the trustee could then recover from the transferee its value in money. Id.

In cases where the property was gone and the trustee was suing for its value, the courts limited the trustee's recovery in calculating the value. Where the transferee in selling the property incurred reasonable expenses and realized as much money as the trustee could have, courts would limit the recovery to the net proceeds of the sale. *Id.* at 1103. Thus, in *Wolcott v. Commercial Investment Trust, Inc.*, 7 F.Supp. 809 (S.D.N.Y.1934), where the preferred transferee-creditor incurred counsel fees in foreclosing a maritime lien, the court reasoned that the liens's "value" was reduced thereby:

"If the defendant cannot restore the property, the trustee gets the value. *Mc*

*Elvain v. Hardesty*, 169 F. 31 (C.C.A.8). Where the defendant has realized on the property and has obtained for it as much as the trustee could have obtained, he is chargeable only for the net proceeds of sale. *Allen v. McMannes*, 156 F. 615, 622 (D.C.Wis.). In the instant case the defendant foreclosed the maritime lien and cannot restore it to the trustee in the form of a lien. If the transaction was a voidable preference he is therefore chargeable with the value. But the value was not the face amount of the lien. If a stranger had purchased the lien for cash at the time of the transfer to the defendant, he would doubtless have deducted, from the amount he was otherwise willing to pay, the fee he would have had to pay a lawyer to foreclose and realize on the lien. Where choses in action are transferred preferentially and the transferee incurs necessary reasonable expenses in reducing them to case, he may be held liable only for the net proceeds . . ." *Id.* at 811–12.

In *Sulmeyer v. Miller Engineering Co.*, 297 F.2d 856 (9th Cir. 1962) the court stated:

"If the efforts of the Millers (i. e. their expenditures) were of eventual value to the trustee (and through him the general creditors were benefited) the Millers should have an offset for the reasonable value of their purchased services in the marketplace or for what the services were worth to the trustee whichever is less, and not to exceed the amount paid." *Id.* at 857.

The Ninth Circuit used this rule again in *Cedar-Comp. Materials Co. v. Bumb*, 344 F.2d 256, 259 (9th Cir. 1965):

"The record shows that the property sold on the execution sale consisted of assets of the bankrupt's business. If such property had not been sold on the execution sale the same would have been liquidated by the trustee. Obviously, the bankrupt estate would have been put to some expense in connection with the preservation and liquidation of such property. To the extent that such expense was saved to the bankrupt estate, the estate and creditors were benefited by the costs incurred in the execution sale. It is well settled that courts of bankruptcy are essentially courts of equity. Injustice and unfairness should be avoided in the administration of a bankrupt estate.

We believe that costs should be allowed to the appellant to the extent that costs and expenses were saved to the bankrupt estate by reason of the costs incurred by the appellant in the execution sale."

In *Guarantee Trust & Safe Deposit Co. v. Cooper*, 31 F.2d 95 (3d Cir. 1929), the preferred creditor had taken an assignment of the bankrupt steamship navigation company's assets during the preference period. As part of the assignment agreement, the creditor became the lessee of the pier which the bankrupt had leased from the city of Philadelphia. The bankrupt continued its business on the pier under the creditor's supervision; the creditor paid the city rent and wages. Later, the creditor wrongfully dispossessed the bankrupt and gave possession to another entity. The court refused to give the creditor for rents and wages paid after this dispossession. However, after ruling that the agreement of assignment was a voidable preference, the court allowed the creditor credit for expenditures before the wrongful dispossession:

"But as to the item of $2,186.67 for rent and wages accruing and paid prior to the trespass, a different rule applies. The appellant was not then a trespasser; it had a legal right to make such payments; the payments were of advantage to the bankrupt and to his estate. The payments being lawful, appellant should have been given credit therefor." *Id.* at 96.

The opinion does not specify whether the court regarded the transferred property as having been "converted"; at that time it didn't matter, because the trustee had the option of suing for the property *or* its value under the Act prior to 1938. 3 pt. 2 (*Collier on Bankruptcy (14th Ed.) supra.* However it appears that the court was holding that credits would be allowed in a suit to recover

"property" since it felt no need to discuss the distinction between recovery of property and recovery of value. *Collier* took this view by discussing the case in the context of property recovery. *Id.* at 1102.

I conclude that under the old Act it was within a courts power to allow preferred creditors some credit for expenses incurred with regard to property preferentially transferred. The amount of this credit was well stated in *Sulmeyer v. Miller Engineering Co., supra* as the reasonable value of the services obtained in the marketplace, or the value of such services to the trustee, whichever is less, but not to exceed the amount actually paid.

B. Under the Bankruptcy Reform Act of 1978 ("the new code") the provisions for the trustee's recovery of an avoided preferential transfer (and other avoided transfers) are found in § 550. 11 U.S.C. § 550(a) reads:

"(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee."

This changes the law under the old Act; there is no "conversion" requirement and the trustee may recover the value of the property transferred if the court so orders: However, there are not guidelines for when the court may permit or order recovery of the property's value. 4 *Collier on Bankruptcy* (15th Ed.) ¶ 550.02 p. 550–5, & 6.

Other subsections contain limits on the trustee's recovery:

"... (b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and

(B) any increase in value as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property;

(E) discharge of any lien against such property that is superior or equal to the rights of the trustee; and

(F) preservation of such property...."

11 U.S.C. §§ 550(b), (c), (d)

11 U.S.C. § 550(e) states a limitation period, which is not at issue in this case.

With regard to the phrase "good faith" and § 550(d) the Legislative history of the code remarks:

"... The phrase "good faith" in this paragraph is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property an innocent transferee, and receiving a retransfer from him, that is, "washing" the transaction through an innocent third party. In order for the transferee to be excepted from liability under this paragraph, he himself must be a good faith transferee...."

. . . Subsection (d) protects good faith transferees, either initial or subsequent, to the extent of the lesser of the cost of any improvement the transferee makes in the transferred property and the increase in value of the property as a result of the improvement. Paragraph (2) of the subsection defines improvement to include physical additions or changes to the property, repairs, payment of taxes on the property, payment of a debt secured by a lien on the property, discharge of a lien on the property, and preservation of the property. . . . "

House Report No. 95–595, 95th Cong., 1st Sess. (1977) pp. 375–6: Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) p. 90, U.S.Code Cong. & Admin.News 1978, p. 5787, 6332.

It is apparent that 11 U.S.C. § 550(d) is setting forth guidelines in an area previously governed by the case law discussed earlier in this opinion. See pp. 524–526 *supra.* Thus, the question of how these guidelines apply to Mersman Tables, Inc.'s position must be decided.

C. The stipulation does not contain any evidence of "bad faith" on the part of Mersman Tables, Inc., which is the initial transferee or entity for whose benefit the transfer was made. Therefore, Mersman Tables, Inc. could assert a lien on the "property recovered" if the expenses it incurred constituted an "improvement" under § 550(d)(2); however, the lien could only be for the lesser of the two measures specified by § 550(d)(1).

In its brief, Mersman Tables, Inc. mentions the attachment of an attorney's lien to the funds transferred. If this is correct, one might argue that the expenses were "improvements" under § 550(d)(2)(D) or (E). However, it is not necessary to decide this issue because such an "improvement" did not increase the value of the property transferred, under § 550(d)(1)(B).

 This conclusion is reached because "value" is to be considered from the point of view of the trustee and the estate. In commenting on this provision, *Collier* states, "The purpose of the lien is to prevent un-

just enrichment of the estate rather than to insulate improvements made by good faith transferees." 4 *Collier on Bankruptcy,* (15th Ed.) § 550.04, p. 550–13 n.2. The old Act cases also analyze value from the trustee's and estate's perspective. See *e. g. Wolcott v. Commercial Investment Trust, Inc., supra; Sulmeyer v. Miller Engineering Co., supra; Cedar-Comp Materials Co. v. Bumb, supra; Guarantee Trust & Safe Deposit Co. v. Cooper, supra.* It is hard to see how discharge of the attorney's lien on the transferred funds would improve their value when the attorney's lien would not have attached but for the preferential transfer itself. If the "payments" constituting the transfer had not been made, and the funds had gone into the estate when the petition was filed, the trustee would not have to incur comparable costs with respect to such funds in a liquidation and distribution of the estate's assets to creditors. In short, discharge of the attorney's lien on the transferred funds did not increase their value to the trustee.

The only other argument I can think of on Mersman Tables, Inc.'s behalf is that its action somehow preserved the assets collected. 11 U.S.C. § 550(d)(2)(F). The factual basis for this argument might be found in the debtor's schedules, which show no cash on hand or deposits. However, this is speculative and not sustainable from the facts before the court at this time. I would be willing to hold an additional hearing in this matter if Mersman Tables, Inc. has other evidence which would aid this court in making findings of fact under 11 U.S.C. §§ 550(d)(1) and (2)(F).

D. Mersman Tables, Inc.'s brief contained a lengthy discussion of *Brinig v. American Credit Bureau, Inc.,* 439 F.2d 43 (9th Cir. 1971). That case is not in point here. In *Brinig* the trustee did not sue the preferred creditors; he sued the collection agency which collected the preference, remitted 80% to the preferred creditors, and kept a 20% commission. The court held that inasmuch as the trustee could not recover the portion remitted to the creditor (due to the statute of limitations) he could

not recover from the collection agency because the agency was a mere intermediary. The trustee in this case is not suing the sheriff or the creditor's attorney.

### CONCLUSION

Judgment for the trustee, Joseph A. Chrystler, for $3,003.37, may be entered 30 days from entry of this opinion and order, unless Mersman Tables, Inc. amends its answer to assert defenses under 11 U.S.C. § 550(d)(1) and (2)(F) within this 30 day time period. If Mersman Tables, Inc. so amends its answer, the matter may be set for an evidentiary hearing.