In re BROOKLYN OVERALL
CO., INC., Debtor.

Jules V. SPECINER, Trustee of Brooklyn Overall Co., Inc., Plaintiff,

v.

GETTINGER ASSOCIATES, a limited partnership, and Robert S. Gettinger as its General Partner, Defendants.

Bankruptcy No. 884–41330–18.
Adv. No. 885–0163–18.

United States Bankruptcy Court,
E.D. New York.

March 4, 1986.

Bertram Goldstein, P.C., New York City, for trustee.

Shea & Gould, New York City, for defendants.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Pursuant to the adversarial procedure charted by Part 7 of the Rules of Bankruptcy Procedure, Rules 701 *et seq.*, the trustee (hereafter "plaintiff") on August 16, 1985, served upon the above-named defendants a complaint encompassing two separately stated and numbered causes of action.

The gravamen of the first cause of action seeks to avoid the transfer (assignment) of a lease between the debtor as tenant and the defendants as landlord occurring during the "gap" period of an involuntary petition. The plaintiff requests reinstation of the lease, or the recovery of its value, to wit, the sum of $15,300 evalued by the plaintiff as the worth of the unexpired term of the lease. Plaintiff's second cause of action posits on 11 U.S.C. § 542 and seeks the turnover of the lease security deposit of $7,964.42 alleged to have been commingled by the defendants in violation of the segregation mandate of Article 7 of the General Obligations Law of the State of New York.

Issue was joined by the defendants' answer served on September 30, 1985. The defendants deny and admit certain allegations of the complaint and assert affirmative defenses to the first and second causes of action. During the course of the trial, the plaintiff elected to withdraw its second cause of action. Accordingly, this decision focuses solely on the trustee's first cause of action and defendants' affirmative defenses appertaining.

## FACTS

By lease dated November 15, 1983, the debtor leased premises 1407 Broadway, New York, utilized as a showroom and office for the sale and display of ladies' wearing apparel. The lease by its terms commenced on January 1, 1984, and terminated on December 31, 1986, at an annual rental of $31,300.

On August 23, 1984, an involuntary petition under Chapter 7 of the U.S. Bankruptcy Code, Title 11 U.S.C. § 303, was filed against the debtor. No answer to the petition was interposed and accordingly on September 19, 1984, an order for relief was entered by this court. An interim trustee was appointed on the same date. Shortly thereafter at the Section 341 meeting, the creditors elected Jules V. Speciner as trustee of the debtor's estate. The trustee accepted the position and qualified on November 9, 1984.

On or about September 1, 1984, after the commencement of the case but prior to the entry of an order for relief, the debtor assigned to the defendants the debtor's

remaining interest in the lease which by its terms would otherwise have terminated on December 31, 1986. The assignment transferred all of the debtor's "right, title and interest" in the lease to the defendants. The debtor, however, remained liable for the payment of rent for any period in which the defendants did not receive a rental payment equivalent to the debtor's rent obligation under the lease. The debtor retained no right to use, possess or control the property once the assignment took effect.

On September 1, 1984, the defendants entered into a three-year lease with a third party in which the third party agreed to pay $36,200 per annum for the space formerly occupied by the debtor.

## LITIGANT'S CONTENTIONS

In sum, the plaintiff contends that the incidence of assignment and transfer of the debtor's property subsequent to the commencement of the case but prior to an order for relief subjects the transfer to the avoidance powers accorded the trustee under § 549(b), except to the extent of value given in exchange for the transfer. Invoking the provisions of 11 U.S.C. § 550, the trustee maintains that in lieu of pursuing a reinstation of the lease, he is authorized with leave of the court to opt for the recovery of the monetary value of the property transferred during the "gap" period.

The defendants in contraposition assert a multiplicity of contentions embodied within the context of two affirmative defenses, collating in essence to the following:

### FIRST AFFIRMATIVE DEFENSE

(a) Since neither the trustee nor the interim trustee acted timely to assume or reject the lease within the 60-day time line mandate of § 365(d)(1), the lease was deemed automatically rejected by operation of law as of November 18, 1984.

(b) That the automatic rejection relates back to the period immediately prior to the date of filing of the petition pursuant to the imperative of subdivision (g)(1), § 365.

(c) That accordingly the lease never became property of the estate since any legal or equitable rights the debtor had in the lease were abrogated at the commencement of the case.

(d) Premised upon the above ratiocination, the defendants conclude that the trustee is estopped from proceeding under § 549(b) and § 550 is rendered moot.

The defendants' second affirmative defense is similar to the first affirmative defense to the extent that it is multi-segmental. However, it is inconsistent with and acutely departs from the reasoning advanced by the defendants in the first affirmative defense.[1]

### SECOND AFFIRMATIVE DEFENSE

(a) Defendants' first contention proffers a three-pronged "assumption arguendo," *viz.*, that even if the lease is deemed property of the estate and assuming the applicability of § 549(b) and further conceding that the estate was harmed by the transfer, defendants insist that the trustee is precluded from recovering any money from the defendants premised on the notion that the loss incurred by the estate is directly attributable to the trustee's overt lack of diligence and not by the act of assignment.

Defendants' second contention adverts to the latent liability of the debtor as guarantor of the rent under paragraph 2 of the Assignment Agreement, inferring that such commitment occasioned the lease to survive the assignment. Consequently, defendants submit that the trustee or interim trustee was obligated to comply with the requisite precept of § 365(d)(1), *e.g.*, to timely assume or reject the lease.

Defendants' third contention is anchored to the concept that the estate received value. Defendants allude to the fact that they leased the premises to a third party for an increased rental, thus relieving the estate from liability for any rental deficiency and negating any § 549(b) involvement.

---

**1.** The pleading of inconsistent defenses is permitted by Rule 8(e)(2), General Rules of Pleading.

In ancillary context, the defendants contend that the amount of recovery sought by the trustee is overstated, alleging that it fails to reflect the present value of $11,900, a sum calculated by the defendants as the correct value of the unexpired lease. In addition, the defendants assert that trustee's computation fails to take into account costs attendant if the lease had been assumed or assigned by the trustee and further fails to take into account the sum necessary to cure defaults.

DISCUSSION

What constitutes property of the estate is broadly defined under 11 U.S.C. § 541(a). It unequivocally states that the commencement of a case creates an estate. The estate is comprised of all legal or equitable interests of the debtor in property wherever located as of the date the case is commenced.[2] H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–8 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess., 82–3 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. 4 Collier on Bankruptcy, Ch. 541 (15th ed. 1984); *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 7 B.C.D. 548, 4 C.B.C.2d 306 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *Harsh Inv. Co. v. Bialac (In re Bialac)*, 712 F.2d 426, 8 C.B.C.2d 1395 (9th Cir.1982).

■ While it is axiomatic that § 303(f) authorizes the debtor "to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced during the time frame preceding the issuance of an order for relief," the debtor's right to dispose of the estate's property or interests during such "gap" period is not absolute or inviolate but rather is subject to scrutiny and avoidance within the purview and dictate of § 549(b). 2 Collier on Bankruptcy, Ch. 303 (15th ed. 1984); Weintraub and Resnick Law Manual, ¶ 2.14 (1980).

Section 549(b) provides:

In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case, in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

■ The above subdivision, when placed in juxtaposition with subdivision (a), patently validates "gap" period transfers to the extent of value exchanged. Collier on Bankruptcy, 15th ed., vol. 4, ¶ 549.03; *McLemore v. Citizens Bank (In re Tom McCormich Enterprises, Inc.)*, 26 B.R. 437, 7 C.B.C.2d 1288 (Bankr.M.D.Tenn. 1983).

A reading of § 549(b) *a rubro ad nigrum* elicits the intention of Congress to temper the "gap" period debtor's right to transfer property of the estate for no value or less than its value equivalent. H.R. No. 95–595, 95th Cong., 1st Sess. 375 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

■ The foregoing statutory proviso is analogous to and tracks § 548(a)(2) wherein the trustee may avoid a pre-petition transfer of the property if the debtor received less than the reasonably equivalent value of the property and the debtor was insolvent at the time of such transfer. However, unlike § 548(a)(2), the trustee is not required to prove the debtor's insolvency at the time of the transfer. *In re Jorges Carpet Mills, Inc.*, 41 B.R. 60 (Bankr.E.D. Tenn.1984). Moreover, whether the transferee had notice or knowledge, actual or constructive, of the filing of the involuntary petition is irrelevant. All that needs to be established is that the value equivalent of the property transferred was not obtained by the estate. Thus, the operative

---

**2.** The filing of the petition does divest the estate of those contracts which, pursuant to § 365(c), cannot be assumed by the trustee, *e.g.*, certain personal service contracts. *See, In re Tonry*, 724

F.2d 467 (5th Cir.1984); *In re Noonan*, 17 B.R. 793, 797, 8 B.C.D. 919, 5 C.B.C.2d 1536 (S.D.N.Y. 1982).

impluse of § 549(b) is meant to curb abuses and protect the estate from dissipation during the "gap" period. In corollary intendment, it seeks to preserve the Code's objective by preserving the quality of distribution to all creditors, including the rights of a "gap" transferee for value. *Matter of Kennesaw Mint, Inc.,* 32 B.R. 799 (Bankr. N.D.Ga.1983).

Section 550 supplements § 549(b) and prescribes the liability of a transferee of a voided transfer. It also enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee. H.R. Report No. 95–595, 9th Cong., 1st Sess. 375–376 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 90 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787; *Chrystler v. Mersman Tables, Inc. (In the Matter of Furniture Den, Inc.),* 12 B.R. 522, 7 B.C.D. 1115, 4 C.B.C.2d 1077 (Bankr. N.D.Mich.1981).

FINDINGS AND CONCLUSIONS OF LAW

As delineated in the enumerated Findings and Conclusions of Law following, the defendants ascriptive viewpoint of the issues in dispute, albeit adroitly presented and argued, is nevertheless fundamentally flawed.

1. The record clearly establishes that the debtor, on September 11, 1984, during the so-called gap period, transferred to the defendants "property of the estate" as defined by 11 U.S.C. § 541(a)(1).

■ 2. That the subject transfer pursuant to § 303(f) was legal and binding. It continued to carry the badge of validity subject, however, to the trustee's avoidance powers conferred by § 549(b).

3. Defendants assertion that the transfer did not involve property of the estate is rejected as specious. Adopting defendants' rationale would perforce predicate on the anamolous assumption that neither property of the debtor nor property of the estate was transferred by the lease assignment agreement.[3]

■ 4. Defendants interpretation of and purported applicability of the "relation back" maxim articulated in § 365(g)(1), *i.e.*, that the trustee or interim trustee's failure to assume the lease within 60 days after the order for relief resulted in the automatic rejection of the lease, which rejection becomes effective as of the date immediately prior to the filing of the petition, is rejected. The defendants misread and misconstrue the statutory purpose of the relation back doctrine. The thrust of subdivision (g)(1) is to fix the point in time when rejection of an executory contract or unexpired lease creates a breach. Its purpose is to treat claims that arise from the debtor's rejection as pre-petition claims. 2 Collier on Bankruptcy, Ch. 365 (15th ed. 1985), H.R. No. 95–595, 95th Cong., 1st Sess. 349 (1977); S.R. No. 989, 95th Cong., 2d Sess. 60 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Chipwich, Inc.,* 54 B.R. 427 (Bankr.S.D.N.Y.1985); *In re Cardinal Export Corp.,* 30 B.R. 682, 10 B.C.D. 1031, 1033 (Bankr.E.D.N.Y.1983). Defendants postulate, if given validity, would render all "gap" transactions impotent and effectively cancel § 303(f). In addition, the large quantum of cases relied upon by the

---

**3.** By treating the contract as if it were terminated on the date the petition was filed, the estate's liability for post-petition expenses is limited. First, any claims for breach of contract arising out of the termination will be treated as a pre-petition claim with no special priority. *NLRB v. Bildisco,* 465 U.S. 513, 104 S.Ct. 1188 at 1199. Second, the estate's liability for post-petition use will be limited to the reasonable value of that use. Although a court will generally use the contract amount in fixing this value, it need not do so and in a given case, this value might be considerably less than the amount contracted for. *Accord, Id.*

This second effect of the relation back doctrine may have been vitiated by one of the provisions added to § 365 as part of the 1984 amendments to the Code. Pursuant to the new § 365(d)(3):
The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property until such lease is assumed or rejected.
One commentator assumes that this provision requires the trustee to make timely payments of the debtor's lease obligations. B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 7.10[5]. *But see,* 2 Collier on Bankruptcy, ¶ 365.03, predicting that § 365(d)(3) will not be construed to require the trustee to pay more than reasonable use and occupation.

defendants are inapposite. Not one of the cases submitted pertain to a "gap" period transfer. The court is constrained to note that such inapt line of cases submitted as germane to the issue borders on a breach of the absolute probity rule.

5. Defendants reliance on § 365(d)(1) in support of its contention that the failure of the trustee or interim trustee to assume the surviving lease within 60 days after the order of relief eventuated in the automatic rejection of the lease by operation of law compelling the trustee or interim trustee to act to assume or reject is untenable in law or equity. Defendant simply ignores the relevant fact composition of the case and attendant law.[4] Sequent to the act of transfer, there remained only the *unilateral* (emphasis added) rental stability obligation of the debtor. Pursuant to New York State law, the essential criterion of a lease is that it constitute a bilateral agreement. *Feder v. Caliguira*, 8 N.Y.2d 400, 208 N.Y.S.2d 970, 171 N.E.2d 316; *Dubary v. Trans-American Ins. Co.*, 75 A.D.2d 312, 429 N.Y.S.2d 449, *mot. for lv. to app. denied*, 51 N.Y.2d 709, 435 N.Y.S.2d 1025, 417 N.E.2d 96.

The court finds that the lease modification by the terms of the assignment agreement terminated the landlord-tenant relationship. Consequently, after September 1, 1984, no executory contract or true unexpired lease existed for the trustee to assume or reject under § 365(d)(1).

■ 6. The defendants endeavor to persuade the court that value was given in exchange for the assignment of the lease by referring to the fact that the defendants rented the premises for a rent in excess of

debtor's guarantee, thereby absolving the debtor from any rent deficiency obligation clearly lacks merit. Specifically, in clear language, and by its unambiguous terms, § 549(b) excludes from its definition of value the "satisfaction or securing of a debt that arose before the commencement of the case." [5]

7. The trustee is entitled to recover from the debtors under § 550 to the extent of the deficiency in value exchanged.

■ As previously noted, § 550 of the Code governs the liability of a transferee once a transfer is avoided under § 549. Pursuant to subdivision (a), the trustee is empowered to recover for the estate the transferred property or, with court authorization, an amount equal to its value. *In re Belize Airways, Ltd.*, 7 B.R. 601, 6 B.C.D. 1318, 3 C.B.C.2d 315 (S.D.Fla.1980). Where it is impractical for the trustee to recover the property, the court will generally authorize the recovery of its value. *In re Furniture Den, Inc.*, 12 B.R. 522, 7 B.C.D. 1115, 4 C.B.C.2d 1077, 1080 (Bankr. W.D.Mich.1981).

■ In this case, it would be unfeasable to return the property to the trustee. The landlord has relet the premises and there is no compelling reason to disturb the new tenant's occupancy.

At the time of the assignment, the lease had two and one-quarter years remaining; the rent increase to the landlord for this period was $5,100 per annum, hence the landlord will receive $11,475 as a result of this transfer. No evidence was adduced indicating that the landlord incurred any expenses in reletting the premises.[6]

---

4. The landlord argues that the debtor's interest in the lease survived the assignment because under the assignment agreement the debtor retained certain obligations to the landlord. However, this argument ignores the essential characteristics of a lease: that in return for a payment of rent, the lessee have a right to use or possess the leased property. *Feder v. Caliguera*, 8 N.Y.2d 400, 208 N.Y.S.2d 970, 972, 171 N.E.2d 316 (1960). Under the debtor's assignment with the landlord, the debtor retained no such rights.

5. The Code does not contain any directive with reference to the burden of proof in a § 549(b)

action; however, Bankruptcy Rule 6001, Rules of Bankruptcy Procedure, supplements the statute by providing that the transferee asserting validity of the transfer has the burden of proving its validity.

6. There is no need to reduce this sum to reflect its present value. *See*, Dobbs, Handbook on the Law of Remedies, § 8.8 at 573–74 (1973). The landlord has already received over half the amount due him under the lease. Any discount to reflect the present value of the remaining rental payments would be more than offset by the interest the trustee is entitled to. *In re*

Accordingly, the court dismisses the defendants' affirmative defenses and grants judgment to the trustee in the sum of $11,475.

It is SO ORDERED.

*Fulghum Construction Corp.*, 45 B.R. 112, 11

C.B.C.2d 1378, 1391 (Bankr.M.D.Tenn.1984).