### In re WILLIAMS CONTRACT FURNITURE, INC.,
#### Debtor.

**Bankruptcy No. 90–33057.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 18, 1992.

Bruce H. Matson, William A. Broscious, Otto W. Konrad, Hazel & Thomas, P.C., Richmond, VA, for trustee.

C. Thomas Ebel, Robert J. Burr, Sands, Anderson, Marks & Miller, P.C., Richmond, VA, for Burge Associates.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon the Request for Payment of Administrative Expense filed by Burge Associates on December 12, 1991. Upon consideration of the evidence, arguments of counsel, and the parties' memoranda, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Williams Contract Furniture, Inc. ("debtor") is a wholesale and retail office furniture business. The debtor leased from Burge Associates ("Burge") a warehouse pursuant to five year lease beginning in January 1, 1989, and ending December 31, 1994, for $6,979.17 per month (the "lease"). The last monthly installment of rent was paid on October 1, 1990, and since then no further sum has been paid by the debtor or received by Burge as rent for the premises. On October 2, 1990, a Chapter 7 involuntary petition was filed against the debtor. On October 19, 1990, Burge entered into a lease termination agreement with the debtor whereby Burge agreed to terminate the lease in consideration for $9,800. Under the terms of the lease termination agreement the debtor was to vacate the premises by October 22, 1990. Although the debtor paid the $9,800, the debtor failed to vacate the premises. Because the debtor failed to respond to the involuntary petition, an Order for Relief was entered on October 26, 1990. Harry Shaia, Jr. was appointed as Trustee for the debtor on November 5, 1990. By a Judgment Order entered November 12, 1991, in an adversary proceeding, this Court ruled that the $9,800 payment to Burge by the debtor constituted an avoidable post-petition transfer and award-

ed the Trustee judgment in the amount of $9,800, plus costs. The Judgment Order also permitted Burge to file a proof of claim pursuant to Federal Rule of Bankruptcy Procedure 3002(c)(3) for any unsecured claims arising as a result of the trustee's recovery of the post-petition transfer. Burge did not seek an appeal of this order and subsequently filed a proof of claim in the amount of $83,750.04 for damages resulting from the debtor's rejection and termination of the unexpired lease. The debtor eventually vacated the premises on December 10, 1990.

Burge filed its Request for Payment of Administrative Expense on December 12, 1991. Burge claims that the Judgment Order of November 12, 1991, effectively voided the lease termination agreement and reinstated the lease. Furthermore, Burge alleges that since the debtor did not then assume or reject the lease, the lease was rejected sixty days after the entry of the Order for Relief, December 25, 1990, pursuant to § 365(d)(4). Under § 365(d)(3) and § 503(b)(1)(A), Burge is requesting administrative rent for the period from November 1 until December 25, 1990, and in addition, a 5% late charge as provided in the lease. The Trustee asserts that the compulsory counterclaim rule and res judicata preclude Burge from asserting an administrative expense claim, and in addition, since the lease was terminated, there is no lease upon which the administrative rent claim could be based.

## CONCLUSIONS OF LAW

■ The Trustee claims that Burge is attempting to relitigate a matter that has already been adjudicated and therefore, the doctrine of res judicata precludes Burge from asserting its administrative claim. The term "res judicata" includes both claim and issue preclusion. Under claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). An essential element of this doctrine is that there be an identity between the two causes of action. *Nash Cty. Bd. of Ed. v.*

*Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981). Although a variety of tests and definitions have developed under modern authority, an identity of causes exists when "both suits deal with the same subject matter ...; the evidence will be identical, and the damages recoverable and the relief available the same." *Id.* In the present matter, Burge is not attempting to relitigate whether the payment of the $9,800 constituted an avoidable transfer, but is instead raising for the first time the claim for administrative rent. Even though both actions relate to the lease and the lease termination agreement, each claim requires distinctly different and unique elements to be evidenced for its resolution. Each claim can be decided independent of the other. Therefore, claim preclusion is inapplicable in this instance.

■ Issue preclusion, also referred to as collateral estoppel, states that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits involving a party to the prior litigation based on a different cause of action. *Montana*, 440 U.S. at 153, 99 S.Ct. at 973. An indispensable requirement of issue preclusion is the actual litigation of the issue. *In re Raynor*, 922 F.2d 1146, 1149 (4th Cir.1991). *See also Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988). This Court believes that the issues surrounding Burge's claim for administrative rent were not "actually and necessarily determined" in the prior proceeding. In the Judgment Order of November 12, 1991, this Court made no determination as to the validity of the lease termination agreement, the status of the lease or the permissibility of any future claims that Burge may have as a result of the avoidance action. This Court finds that neither claim preclusion nor collateral estoppel preclude Burge from asserting their administrative rent claim.

■ The Trustee alleges that Burge's administrative rent claim is precluded by the compulsory counterclaim rule. Federal Rule of Civil Procedure 13, made applicable to these proceedings through Federal Rule

of Bankruptcy Procedure 7013, provides in pertinent part that:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ...

The first sentence of F.R.C.P. 13(a) requires a pleader to state a counterclaim that he has against an "opposing party" at the time he serves his pleading. F.R.C.P. 13(a). This requirement is usually of little significance except in actions brought by someone acting in a representative capacity. The general rule is that in an action brought by a plaintiff in his representative capacity, a defendant cannot assert a counterclaim against the plaintiff in his individual capacity because it would not be a counterclaim against the "opposing party". *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 543 n. 6, 106 S.Ct. 1326, 1332 n. 6, 89 L.Ed.2d 501 (1986); *Higgins v. Shenango Pottery Co.*, 99 F.Supp. 522 (D.C.Pa.1951); *Pioche Mines Consol., Inc. v. Fidelity Philadelphia Trust Co.*, 206 F.2d 336 (9th Cir.1953), *cert. denied*, 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400 (1953); 6 Wright & Miller & Kane, *Federal Practice & Procedure: Civil* § 1404 (2d ed. 1990). And likewise, in an action brought by a plaintiff in his individual capacity, the defendant cannot assert a counterclaim against the plaintiff in the plaintiff's representative capacity. For example, when the trustee commences an adversary proceeding based on a right of action which the debtor had and which passed to the trustee in bankruptcy, such as a breach of contract claim, if the defendant has a counterclaim against the debtor the compulsory counterclaim rules apply. However, when the trustee commences an adversary proceeding based on an action belonging to the trustee in the trustee's own capacity, such as an avoidance action, if the defendant has a claim against the debtor, the compulsory counterclaim rules are inapplicable. *See* 9 *Collier on Bankruptcy*, ¶ 7013.14, at 7013–6 (Lawrence P. King, ed., 15th ed. 1992). The claim of the defendant is one against the debtor but the claim of the trustee is not the debtor's but belongs exclusively to the trustee. The parties to the action are therefore different. An action to avoid a post-petition transfer is a right exercised by the trustee in his capacity as a trustee. In a Chapter 7 proceeding, the debtor itself does not have the right to bring an avoidance action. Burge's claim for administrative rent is against the trustee as a representative of the debtor, not in his capacity as a trustee. In effect, the two are not claims existing between the same parties. Therefore the administrative rent claim of Burge is not precluded by the compulsory counterclaim rule.

 Involuntary Chapter 7 proceedings were initiated against the debtor pursuant to the provisions of 11 U.S.C. § 303. Because of the filing of the Chapter 7 involuntary petition, the debtor and the operation of his business became subject to § 303(f). Section 303(f) provides as follows:

(f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire or dispose of property, as if an involuntary case concerning the debtor had not been commenced.

11 U.S.C. § 303(f). There are no restrictions on the operation similar to those found in § 363 unless the court issues an order conditioning the operation of the business. 11 U.S.C. § 303(f). During the "gap" period which occurs between the filing of the petition and entry of the order for relief, there is no obligation on the part of the debtor to disclose the pendency of the case with whom he conducts his business. *In re Brooklyn Overall Co., Inc.*, 57 B.R. 999, 1002 (E.D.N.Y.1986). In the case at bar, the debtor, after the involuntary Chapter 7 petition was filed, was free to operate his business without restrictions. There were no court orders imposing restrictions upon the operation of his busi-

ness. Consequently, the lease termination agreement being within the debtor's authority to use, acquire or dispose of property, is a valid and binding contract between Burge and the debtor.

■ Although the lease termination agreement is a valid and binding contract, certain postpetition transfers may be avoided by the appointed trustee after the order for relief is entered. Section 549 states:

(a) Except as provided in subsection (b) or (c) of this section (which are inapplicable to the case at hand), the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under § 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). The trustee recovered the $9,800 pursuant to § 549(a). However, the Court by awarding this avoidance and allowing Burge a general unsecured claim did not effectively void the lease termination agreement and reinstate the lease. The lease termination agreement, not the lease, remains binding upon the parties. This is true in spite of counsel for Burge's assertion in its Supplemental Memorandum in Support of Request for Payment of Administrative Expense that the hearing on the gap transfer resulted in a recision of the termination agreement between Burge and the debtor. That issue was not raised nor determined and counsel's comments are a clear misstatement of issues in that proceeding. This becomes even more clear when it must be remembered that at the time the trustee was appointed there was no lease for him to assume or reject within the sixty day period following the order for relief and his recovery more than a year later of what was considered a preference does not alter the fact.

■ Although the lease was and remains terminated, Burge still has a valid administrative rent claim for the use and occupancy of its warehouse by the debtor after the termination date. Section 503(b) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under § 502(f) or this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A). Section 503(b)(1)(A) does not enumerate all the specific types of expenses which constitute "the actual, necessary costs of preserving the estate." However, it is generally accepted that once a lease is rejected, or in this instance, terminated by agreement of the parties, if the debtor remains in possession by failing to vacate the premises, the estate becomes liable to the lessor for an administrative expense claim arising from the benefit accruing to the estate for the continued use of the estate. *In re Bob Grissett*, 50 B.R. 598, 607–08 (E.D.Va. 1985). *See also Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1285 (5th Cir. 1986); *In re Thompson*, 788 F.2d 560, 563 (9th Cir.1986); *Farber v. Wards Co.*, 825 F.2d 684 (2d Cir.1987). While the Court has discretion to fix the reasonable administrative rent, the contract rent is presumptively the reasonable value for such use and occupancy. *Id.* However, this presumption may be rebutted by demonstrating that the reasonable worth of the lease is different from the contract rate. *In re Thompson*, 788 F.2d at 563. Since the Trustee has failed to provide the Court with any additional evidence, other than the contract rent, by which fair market value of the lease could be determined, this Court must presume that the contract rent is a reasonable value for use and occupancy of the premises. The Court also finds that the estate received substantial benefits from the continued use of the premises beyond the termination date. The debtor operated its business in the warehouse through mid-December and generated funds through the sale of goods which benefitted the debtor's estate.

In light of these findings, the Court should award Burge an administrative expense claim in the amount of $9,305.60 for the period of November 1, 1990 through December 10, 1990 based on a monthly rent of $6,979.17 ($232.64 per day for 40 days).

An appropriate order will be entered in conformity with this opinion.

## ORDER

This matter comes before the Court upon the Request for Payment of Administrative Expense filed by Burge Associates on December 12, 1991.

For the reasons stated in the Memorandum Opinion entered contemporaneously herewith, it is hereby

ORDERED that Burge Associates be allowed an administrative expense claim in the amount of $9,305.60.